***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award of the Deputy Commissioner. The Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with some modifications and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, defendant-employer was insured for workers' compensation purposes by The Hartford Insurance Company.
3. On October 4, 1999, the Full Industrial Commission entered an Opinion and Award in this case finding plaintiff to be permanently totally disabled. Defendants did not appeal from this decision. Plaintiff appealed from some portions of the Opinion and Award, and the Full Commission, upon remand on March 6, 2001 by the North Carolina Court of Appeals, filed an Opinion and Award on February 6, 2002.
4. Incorporated herein by reference are all previous Industrial Commission forms, orders, and awards, including the previous Opinions and Awards filed December 18, 1998, October 4, 1999, and February 6, 2002 and the Court of Appeals opinion filed March 6, 2001. In addition to the deposition transcripts and exhibits attached thereto, the parties stipulated into evidence at the hearing before Deputy Commissioner Pfeiffer the previous medical reports (over 3000 pages), including those relating to stomach reduction surgery, that were made a part of the record in this case in the prior hearing before Deputy Commissioner Wanda Blanche Taylor. Also stipulated to are the depositions that were a part of the record in the previous hearing, as well as the hearing transcript for the previous hearing before Deputy Commissioner Taylor.
5. In addition to the numerous deposition transcripts and exhibits attached thereto, the parties stipulated into evidence of record as Stipulated Exhibit #1 — payments made to plaintiff's medical care providers which consists of printouts.
6. The following exhibits were admitted into evidence of record at the hearing before Deputy Commissioner Pfeiffer: (1) medical charges post-10/27/97 hearing, (2) medical records post-10/27/97 hearing, (3) plaintiff's calculations on interest on non-indemnity payments, and (4) seven photographs of plaintiff's home.
7. The depositions and records of Dr. George Henry Dornblazer, Dr. Joseph T. Jakubek, Dr. John Wilson, III, Dr. Jeffrey Wilkins, Dr. Jerry M. Petty, Dr. James Yates, Jr., Gary Sanderson, Gene Chapman, Kelli M. Phillips, Frank Grella, and Bettylou DeMarco are a part of the evidence of record.
8. The issues before the Commission are whether defendants should be compelled to provide plaintiff with alternative subsidized accessible housing; whether defendants are liable for paying interest pursuant to N.C. Gen. Stat. § 97-86.2; whether defendants are liable for certain past and ongoing medical treatment and prescriptions; and whether either party is entitled to receive attorney's fees.
 ***********
The Commission was informed by counsel at oral arguments held on March 2, 2004 in the companion case that, since the case at bar was briefed and argued to the Commission, a chair glide has been successfully installed in plaintiff's home and plaintiff is satisfied with the modifications to her currrent home. Accordingly, many of the accommodation issues originally presented by this appeal are now resolved. However, the Commission has included the prior language concerning the accommodations to plaintiff's home for historical clarification. The Commission enters this Opinion and Award based solely on the record before it at the time of the appeal and not upon recent information that does not constitute evidence of record.
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before Deputy Commissioner Pfeiffer, plaintiff was permanently totally disabled and was 55 years old.
2. Plaintiff is not married and lives alone in a 3,500 square foot house. The house is a two-story house with no bedroom or full bath on the first floor. Plaintiff spends a great deal of her time living on the second story of her house because she has difficulty negotiating the stairs.
3. Plaintiff underwent gastric bypass surgery in January 1998 which was unrelated to her injury by accident, and later that year she moved to South Carolina so she could recuperate and be cared for by family members. Plaintiff also spent some time with relatives in Asheville. Despite making occasional trips to North Carolina, she did not return to reside in her house in North Carolina on a permanent basis until January 2001. Plaintiff filed the present Form 33 in early February 2001 on the basis of defendants' failure to modify her house as ordered by the Commission.
4. The Full Commission ordered defendants to modify plaintiff's house according to a June 1997 plan devised by a rehabilitation technology consultant. However, as of the date of the filing of the first Opinion and Award by the Full Commission in February 1999, plaintiff was living out of the state. In addition, plaintiff had her house on the market for about a year in approximately 1999 through 2000. Plaintiff did not return to her house until early 2001, and at that time she did not contact defendants about beginning the modifications. Furthermore, she was only back at her house for approximately one month before she filed the Form 33 in the matter. For these reasons, the Full Commission finds it was not unreasonable for defendants to have failed to follow through on the Full Commission's order to modify plaintiff's house at that time.
5. After the hearing before Deputy Commissioner Taylor, three contractors were sent to plaintiff's home to evaluate plaintiff's home for modifications pursuant to the Full Commission order, and to give estimates of the cost of such modifications. The modification estimates varied widely based upon the contractor and the items requested, from approximately $34,000.00 to approximately $84,000.00. As of the hearing before Deputy Commissioner Pfeiffer, defendants were ready to provide modifications as ordered by the Full Commission, but wanted to hire the contractor of their choosing.
6. The contractors were in agreement that the dimensions of plaintiff's house made the installation of a stair chair glide impractical and infeasible. Accordingly, the only viable option available for the suitable modification of plaintiff's home is to separate the large living room on the first floor into separate rooms and construct a master bedroom and full bath out of the living room and the exercise room. It would take about 60 to 90 days to complete the construction. According to one of the contractors, modifying the house in this way should not affect the resale value of the house.
7. Upon a review of the contractor's plans, and taking into account the previous Opinions and Awards and the opinion of North Carolina Industrial Commission rehabilitation nurse Ms. DeMarco, the most reasonable, appropriate, and adequate plans that comply with reasonably medically necessary specifications for modification of plaintiff's house were the ones set forth in the third proposal (proposal C) of Gene Chapman of Mobile Construction Company.
8. Since the rendering of the initial Opinion and Award by Deputy Commissioner Taylor, plaintiff has had numerous additional falls as a result of her compensable back injury, including several in her own home. Plaintiff, therefore, testified that she no longer feels safe in her own home, and Dr. Dornblazer has testified that this fear contributes to her depression. Plaintiff also testified that she is having difficulty keeping up with a house as large as hers in terms of cleaning and maintenance. Plaintiff initially sought and was awarded modifications of her present home, because her home was a source of pride to her. Now, however, plaintiff apparently has changed her mind and does not wish to pursue modifications on her house, but instead seeks to have defendants assist her in purchasing a smaller, accessible, one-story house.
9. Plaintiff certainly is free at any time to attempt to sell the house that she has owned since 1992. Plaintiff does not need prior permission from defendants or the Industrial Commission to sell her own home, and there is no evidence of record that any party or the Commission has at any time kept her from putting her home on the market and seeking suitable accessible housing herself. In fact, the house was on the market for a period of time and during this period plaintiff received an offer that she did not accept.
10. It is plaintiff's choice whether she wishes to have defendants modify her current house according to Mr. Chapman's proposal, or whether she instead wishes to seek alternative housing. In either case, defendants are only responsible for complying with reasonably medically necessary specifications. Should plaintiff choose to sell her current home, defendants are under no obligation and are not ordered herein to provide her with a lump sum figure representing the costs of the modification of her current home. If plaintiff desires to place her house on the market instead of having it modified to suit her needs, defendants should assist her in this regard by hiring an accessibility consultant to help her locate suitable, alternative housing. Defendants would also be responsible for providing any reasonably medically necessary modifications that may be needed with the alternative housing, although the upfront use of an accessibility consultant may mitigate or even obviate the need for modifications on the potential alternative housing.
11. While Ms. DeMarco testified that a life care plan was necessary, none of plaintiff's medical care providers recommended or suggested a life care plan. Accordingly, there is insufficient evidence of record from which the Full Commission can find and hold by the greater weight that a life care plan is reasonably medically necessary at this time.
12. As a result of her compensable back injury, plaintiff has experienced other medical complications that directly and proximately resulted from the compensable back injury. The Full Commission found that these medical conditions included foot drop, knee injury or problems caused by falls, depression, carpal tunnel syndrome, and dental problems caused by falls. Subsequent to the hearing before Deputy Commissioner Pfeiffer, the parties agreed that Dr. T. Kern Carlton will act as plaintiff's authorized treating physician with respect to pain management and to coordinate referrals for specific treatment.
13. Plaintiff contends that defendants failed to pay for medical treatment and prescriptions relating to the related medical conditions as set forth in the preceding finding of fact. Specifically, plaintiff argues that defendants did not pay for treatment from Drs. Wilson, Wilkins, Yates, Jakubek, and the Miller Orthopaedic Clinic.
14. Upon her temporary move to South Carolina in 1998, plaintiff presented to Dr. Wilson, an internist, for medical management for chronic low back pain and complications from recent surgery. Plaintiff presented to this physician while she was recovering from the unrelated gastric bypass surgery, and she was noted to be severely deconditioned. Because physical therapy had been suggested upon her hospital discharge, Dr. Wilson sent plaintiff to physical therapy. This therapy was due mostly to plaintiff's severe deconditioning and complications stemming from the gastric bypass surgery, and only in very small part to her back. In fact, Dr. Wilson's first medical note only references plaintiff's deconditioning due to surgery as the reason for physical therapy. This initial course of physical therapy ordered by Dr. Wilson was unrelated to plaintiff's compensable back or knee conditions and is not compensable.
15. Dr. Wilson, over the course of his treatment of plaintiff, treated plaintiff for many unrelated medical conditions. These conditions include but are not limited to restrictive lung disease, osteopenia, a hernia, and various illnesses such as upper respiratory infections. None of the treatment for these conditions or illnesses was related to plaintiff's compensable conditions. However, any treatment by Dr. Wilson that actually was related to her compensable back and knee conditions, including but not limited to prescriptions for diet pills, was reasonably necessary to effect a cure or give relief, and defendants are therefore obligated to provide this treatment. It was reasonable for plaintiff to seek treatment by Dr. Wilson to manage her medical care during the period of time that she resided in South Carolina, and to the extent that treatment by Dr. Wilson related to the conditions found compensable by the Full Commission, defendants are responsible for payment of this treatment.
16. Dr. Petty, plaintiff's previous authorized treating physician, referred plaintiff to Dr. Yates, an orthopaedic surgeon in South Carolina, for her complaints of knee pain. Bilateral MRIs of plaintiff's knees revealed severe degenerative arthritis of both knees, as well as lateral meniscus tears in both knees. While Dr. Yates indicated that plaintiff had "really severe" arthritis in both knees which could have caused the meniscus tears, he also testified that plaintiff's significant history of twisting and falling and landing on her knees might or could have caused the meniscus tears or materially aggravated plaintiff's underlying, preexisting condition of severe arthritis and meniscus tearing.
17. On December 14, 1998 plaintiff underwent bilateral knee arthroscopies performed by Dr. Yates. The bilateral arthroscopies were necessary due to the meniscus tears, which could or might have been caused or aggravated by plaintiff's significant history of compensable falls onto her knees. Therefore, the bilateral arthroscopies were reasonably related to plaintiff's knee problems relating to falls as found compensable by the Full Commission. Accordingly, although plaintiff did not request approval for this treatment within a reasonable period of time thereafter, the Commission had already found that injury to plaintiff's knees caused by falls was compensable; therefore, the surgery performed by Dr. Yates is compensable, as the torn meniscus might or could have been caused or aggravated by plaintiff's falls.
18. Plaintiff may need bilateral knee/joint replacements in the future because of the severe arthritic condition in both knees. As of the dates of the medical reports in evidence before Deputy Commissioner Pfeiffer, plaintiff's potential need for knee replacement surgery is due to her underlying degenerative condition and is not related to her falls. Furthermore, it appears from Dr. Yates' records that his treatment of plaintiff's knees after the arthroscopic procedures was related not to problems relating to plaintiff falling, but due to the noncompensable, degenerative arthritic condition. Any treatment by Dr. Yates that dealt only with plaintiff's underlying degenerative arthritis is not related and therefore is not compensable.
19. Dr. Wilson also referred plaintiff to Dr. Wilkins, a physical medicine and rehabilitation specialist, for treatment of her low back pain. Plaintiff began seeing Dr. Wilkins in January 2000. Although plaintiff did not request approval for this treatment within a reasonable period of time thereafter, the Commission had already found that plaintiff's back condition was compensable and that she was entitled to treatment therefore. Because she lived in South Carolina at the time, it was reasonable for her to seek treatment with a local physician. For these reasons, all of the treatment provided or ordered by Dr. Wilkins is related to plaintiff's compensable back condition and was reasonably necessary to effect a cure or give relief.
20. Plaintiff saw Dr. Jakubek, a general dentist, on October 25, 1999 for repair of a fractured crown that was broken during a compensable fall. Plaintiff may later need a root canal on the same tooth; if so, this treatment, like the replacement of the fractured crown, would be related to plaintiff's dental problems caused by falls as held compensable by the Full Commission. Dr. Jakubek did not bill defendant-carrier in this case for any of his treatment of plaintiff, and prior to Deputy Commissioner Pfeiffer's hearing, plaintiff did not request of either defendants or the Industrial Commission that defendants provide this treatment. Nevertheless, as ordered by the Full Commission, defendants are obligated to pay for "dental bills incurred by plaintiff as a result of her [April 19, 1997] fall" and must pay for this crown replacement treatment by Dr. Jakubek upon their receipt of a bill for these services.
21. Plaintiff also thereafter saw Dr. Jakubek on many other occasions for treatment of "extensive cavities" and to do other restorative treatment. These extensive problems could have been caused initially by poor hygiene, by plaintiff being in a six-week coma following her unrelated gastric bypass surgery, by dry mouth that was possibly caused by medication taken by plaintiff for medical conditions, some of which were and some were not related to the fall, or even from stones in the salivary glands. Therefore, due to the tenuous nature of any causal relationship between plaintiff's compensable injury by accident and the need for restorative treatment, the Full Commission hereby finds that Dr. Jakubek's restorative treatment, if not directly related to a fall by plaintiff, was unrelated to plaintiff's compensable back injury and is not compensable.
22. Plaintiff was seen at Miller Orthopaedic Clinic on several occasions in July and August 1997. These appointments were with Dr. Meade for treatment of knee pain following a fall or falls. Plaintiff, through counsel, now argues that defendants failed to pay for these medical expenses, although as of the date of the deposition in this matter, defendants had not been billed by Miller Orthopaedic Clinic for this treatment. It is unclear from the record whether defendants have yet paid for this treatment; however, all treatment provided by Miller Orthopaedic Clinic that is related to plaintiff's compensable back or knee injury caused by falls is compensable, including these appointments, and defendants are obligated to provide it as ordered by the Full Commission.
23. Plaintiff was also seen at Miller Orthopaedic Clinic twice in November 1999, and once in 2000. These appointments were with Dr. McBryde, Dr. Singer, and physician's assistant Haser. However, it was not unreasonable for defendants not to have paid for these evaluations and treatment, as plaintiff specifically informed the medical care provider in question that the treatment was not related to workers' compensation. In fact, the medical notes from these visits report a diagnosis of "displaced degenerative lateral meniscal tear right knee," thereby corroborating the nonwork-related status of these visits. In addition, as of the date of the deposition of the representative from Miller Orthopaedic Clinic on January 23, 2002, this medical care provider had not billed defendant-carrier for any of these services. It was not until September 7, 2000 that plaintiff asked defendants for reimbursement for this medical compensation. This treatment was for plaintiff's degenerative condition and is therefore not compensable.
24. Dr. Carlton, plaintiff's authorized treating physician, has recommended that plaintiff participate in independent pool therapy and has prescribed a pool membership.
25. Plaintiff seeks an award of interest pursuant to N.C. Gen. Stat. §97-86.2 on the unpaid portion of the "final award" herein, which is the Full Commission's second Opinion and Award filed February 6, 2002. There is no evidence to show that defendants have not paid all indemnity benefits owed to plaintiff in a timely fashion, or that benefits at the maximum compensation rate for 1993 were not continuously made to plaintiff, despite the fact that for some time defendants argued that the benefits being paid to plaintiff were not permanent total or temporary total but were instead permanent partial. Furthermore, it was plaintiff who appealed her claim to the Court of Appeals and defendants had accepted the initial opinion of the Full Commission with respect to all issues then outstanding. No statutory interest is due on indemnity benefits made to plaintiff.
26. Plaintiff also seeks interest on all unpaid medical compensation pursuant to the same statute. The only statutory interest under N.C. Gen. Stat. § 97-86.2 owed to plaintiff is interest on Dr. Jakubek's replacement of the fractured crown and interest on Dr. Meade's treatment of plaintiff in July and August of 1997. All of this treatment was held compensable in the initial Opinion and Award filed by the Deputy Commissioner, and affirmed by the Full Commission. These bills had not been paid as of the date of Deputy Commissioner Pfeiffer's hearing.
27. As regards the other medical bills on which plaintiff contends interest is owed, these were in dispute and not decided until the filing of Deputy Commissioner Pfeiffer's decision; had not been incurred at the time of the initial hearing in 1997; and/or were not submitted to defendants for payment until September 7, 2000. With the exception of the bills for Dr. Jakubek's replacement of plaintiff's fractured crown and the treatment by Dr. Meade, all other medical expenses that plaintiff contends are subject to statutory interest were not held to causally related until the filing of Deputy Commissioner Pfeiffer's Opinion and Award, and were not presented to defendants for payment until September 7, 2000, at which time the causal relationship of this medical compensation was disputed. Furthermore, statutory interest on any of these payments, only now found and held to be compensable, is premature unless or until it is determined that this Opinion and Award constitutes a "final award."
28. Dr. Dornblazer testified, in an opinion that is found herein to be credible and is accepted herein as fact, that the overwhelming stressor presently in plaintiff's life is the nonresolution of her legal status with regards to disability and housing. These issues had been litigated and relitigated, argued and reargued for over five years at the time of the Deputy Commissioner hearing, in a claim that defendants initially accepted as compensable pursuant to an approved Form 21 agreement. According to Dr. Dornblazer, whose opinion is found credible and accepted as fact, the resolution of plaintiff's claim will alleviate her stress, and her condition will probably significantly improve when these disputed matters are finally resolved.
29. The Full Commission finds that defendants' defense of the issues addressed herein was reasonable.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Since November 17, 1995, plaintiff has remained permanently totally disabled within the meaning of the Workers' Compensation Act as the result of her April 16, 1993 admittedly compensable injury by accident. N.C. Gen. Stat. § 97-29.
2. Plaintiff is entitled to continue to receive weekly compensation at the maximum compensation rate for the year 1993 of $442.00 continuing for the remainder of her life. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from her compensable injury by accident to the extent it tends to effect a cure, give relief, or lessen her disability, including but not limited to treatment for her back and leg pain, lack of mobility, depression, knee injury caused by her falls, dental problems caused by her falls, aggravation of her carpal tunnel syndrome caused by the use of a cane, and a reasonable weight loss program. This treatment specifically includes treatment by Dr. Wilson that was related to her compensable conditions but excludes the first course of physical therapy ordered by this physician; treatment by Dr. Yates that was related to plaintiff's knee injury "caused by falls," specifically including the bilateral arthroscopies but excluding treatment for plaintiff's degenerative condition; all treatment by Dr. Wilkins; the crown replacement by Dr. Jakubek but excluding the treatment by Dr. Jakubek that consisted of restorative treatment unrelated to falls by plaintiff; and the treatment by Dr. Meade in 1997 for plaintiff's knees. It was reasonable for plaintiff to obtain medical treatment in South Carolina during her temporary residence there. Plaintiff is also entitled to have defendants provide for treatment recommended by Dr. Carlton, her authorized treating physician, including pool therapy and any applicable memberships or fees necessary therefore. N.C. Gen. Stat. §§ 97-2(19) and97-25.
4. Plaintiff is entitled to have defendants provide appropriate modifications to her house as previously ordered by the Full Commission. Such modifications are reasonably required to effect a cure, give relief, or lessen plaintiff's disability. N.C. Gen. Stat. § 97-2(19). Should plaintiff choose the modification of her house, defendants shall provide the modifications as set forth in Mobile Construction Company's proposal C, as these modifications appear to comply with reasonably medically necessary specifications. See, Levens v. Guilford Co. Schools,152 N.C. App. 390, 567 S.E.2d 767 (2002). Should plaintiff instead choose to sell her house and seek alternative suitable housing, plaintiff is entitled to have defendants provide her with assistance by hiring an accessibility consultant, and upon plaintiff's purchase of a new house, defendants would be responsible for providing any reasonably medically necessary modifications that may be needed with the alternative housing. N.C. Gen. Stat. § 97-2(19); Levens v. Guilford Co. Schools, supra.
5. At this time, there is no medical necessity for defendants to prepare a life care plan for plaintiff, and plaintiff is not entitled to have defendants provide her with the same. N.C. Gen. Stat. §§ 97-2(19);97-25.
6. Plaintiff is entitled to have defendants pay statutory interest on Dr. Jakubek's replacement of the fractured crown and interest on Dr. Meade's treatment of plaintiff in July and August of 1997. Defendants shall pay interest on Dr. Meade's treatment from the date of the initial hearing in the matter, October 20, 1997, and shall pay interest on Dr. Jakubek's treatment from October 25, 1999, the date of the service, at the current legal interest rate. N.C. Gen. Stat. § 97-86.2.
7. As set forth in the findings of fact above, plaintiff is entitled to no other statutory interest pursuant to N.C. Gen. Stat. § 97-86.2.
8. Neither party is entitled to attorney's fees pursuant to N.C. Gen. Stat. §§ 97-88 or 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to pay plaintiff permanent total disability compensation benefits at the weekly rate of $442.00, subject to the attorney's fee approved in the initial Opinion and Award.
2. Defendants shall provide medical compensation to plaintiff for treatment by Drs. Meade, Jakubek, Wilson, Yates, and Wilkins, as set forth herein in the above findings of fact and conclusions of law. Defendants hereafter shall continue to provide all medical treatment that is reasonably necessary to effect a cure, give relief, or lessen plaintiff's disability, including recommendations of plaintiff's authorized treating physician, Dr. Carlton, which includes pool therapy.
3. Defendants shall pay directly to plaintiff statutory interest on the July and August 1997 treatment by Dr. Meade, and on the October 25, 1999 crown replacement treatment by Dr. Jakubek, from the date of the hearing on the former, and from the date of the treatment on the latter. The payment of interest is not subject to an attorney's fee and shall be paid entirely to plaintiff.
4. Subject to medically reasonably necessary specifications, and based upon plaintiff's option, defendants shall provide to plaintiff either the modifications of plaintiff's current house as set forth in proposal C of Mobile Construction Company, or shall assist plaintiff in locating suitable alternative housing by hiring an accessibility consultant. Should plaintiff elect to sell her current home and purchase a suitable alternative house, defendants shall provide whatever reasonably necessary medical modifications are indicated in the new house.
5. Defendants shall bear the costs of this proceeding. No other costs, penalties, or attorney's fees are assessed herein.
This the 4 day of June, 2004.
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_________________ BUCK LATTIMORE CHAIRMAN
 S/_________________ DIANNE C. SELLERS COMMISSIONER